IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LAWRENCE SPENCER, | ) | Case No. CV 08-4-N-EJL-CWD |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| NORTH KOOTENAI WATER DISTRICT, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## **REPORT**

The Court has before it Defendants' Motion to Dismiss Plaintiff's Verified Second Amended Complaint (Docket No. 14) and Defendants' Motion to Strike (Docket No. 20). After reviewing the record and hearing oral argument from the parties on both December 17, 2008, and April 27, 2009, the Court recommends that the Motion to Strike be granted in part and denied in part, and that the Motion to Dismiss be denied as more fully explained below.

## I.
## Background

Plaintiff Lawrence Spencer ("Spencer") is pursuing this action against Jack Berger, Tom Crimmins, Linda Davis, Richard Fairhurst, Maimie Moore, Mike Galante and Jane and John Does 1-10, as employees and agents of North Kootenai Water District and as individuals.

**Report and Recommendation - 1**

Spencer alleges that the Defendants' decision denying Spencer a "will serve letter" and their intent to have his subdivision application with Kootenai County denied deprived Spencer of his right to due process of law and deprived him of his property without due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution.  Specifically, Spencer alleges that he applied for annexation of certain real property into the North Kootenai Water District ("District")  with the expectation that, if granted, the District would provide water service to his property.  After the property was annexed by North Kootenai Water District, Spencer was placed on the agenda for the District's meeting on January 5, 2006.   Once he was allowed to enter the meeting room, he requested a will serve letter committing the District to provide water service to the annexed property which he planned to develop into a subdivision.  The District employees told him it was not their policy to issue such a letter and requested Spencer pay $2000 so that an engineer could conduct a study to ascertain what improvements, if any, would be required to provide water service to the annexed property.[1]

      Spencer alleges that the water study was not timely completed by the District and that the District intended to ensure his subdivision application pending before Kootenai County's planning department would be denied.[2]  Spencer further alleges that, because he was not given a will serve letter from the District,  he had no alternative but to withdraw his subdivision application.

---

[1] Spencer also alleges this was a wrongful request, because the District did not have the authority to request that an applicant pay for a study until September 2006.

[2] Spencer alleges that testimony by District representatives during Kootenai County's hearing on his  subdivision request,  to the effect that there was not enough water to serve his annexed property and that obtaining water from the District would be cost prohibitive to his development, demonstrates the District's intent to have the subdivision request denied.

**Report and Recommendation - 2**

Spencer filed his first Complaint on January 4, 2008. (Docket No. 1).  He did not serve this Complaint.  Spencer filed an Amended Complaint on June 27, 2008 (Docket No. 3), and the same day filed a Second Amended Complaint (Docket No. 4) which was served on June 30, 2008.  Defendant's Reply Docket No. 32, p. 3.  The Defendants appeared on August 1, 2008, and on September 2, 2008 Spencer voluntarily dismissed North Kootenai Water District from the lawsuit. (Docket No. 11).   On September 29, 2008 the Defendants filed a Motion to Dismiss Plaintiff's Verified Second Amended Complaint (Docket No. 14).  Spencer responded on October 20, 2008, and a Reply by Defendants was filed on November 6, 2008. (Docket Nos. 17, 19).  In addition to his Response to the Motion to Dismiss, Spencer included an affidavit and a CD containing recorded conversations that Plaintiff allegedly had with one of the Defendants and a third party witness.   In response to this submission, Defendants filed a Motion to Strike the audio recordings and the portions of Spencer's affidavit in which he refers to and/or transcribes portions of the recordings. (Docket No. 20).

A hearing was held on both motions on December 17, 2008, after which the Court issued an Order on January 9, 2009 (Docket No. 25), instructing the parties that the Motion to Dismiss would be converted to a Motion for Summary Judgment under Rule 12(d) of the Federal Rules of Civil Procedure and that a decision on the Motion to Strike would be deferred until further briefing had been submitted on both motions.[3] (Docket No. 25).  The parties stipulated to a briefing schedule;  however, Spencer did not file any response to the Motion to Strike.[4]  The

---

[3] Spencer was allowed oral argument in response to the motion to strike during the hearing on December 17, 2008.

[4] The Stipulation included the following language with respect to the due dates for Mr. Spencer's response: "Spencer's briefing in response to the Motions shall be filed and served no later than March 13, 2009." (Docket No. 26).

**Report and Recommendation - 3**

Motion to Dismiss/Motion for Summary Judgment is now fully briefed and no further oral argument or briefing is necessary for the Court to be fully advised in ruling on these matters. The Court first will address the Motion to Strike.

## II.
## Discussion

**A.     Motion to Strike**

Defendant submitted a CD of audio recorded conversations with a third party witness and engineer, Phil Boyd, and with Defendant Mike Galante, Manager of North Kootenai Water District.  Portions of these conversations are transcribed in Spencer's Affidavit (Docket No. 17-2) and they concern the water study Spencer allegedly contributed $2000 towards and the status of water service to Spencer's property.  Defendants filed their Motion to Strike the audio recordings as well as the transcriptions on the following grounds: 1) the recordings offer evidence outside the pleadings and are therefore improper;  2)  the recordings are not authenticated under Rule 901 or the Federal Rules of Evidence;  and 3) the statements made by Phil Boyd during the recorded conversation constitute inadmissable hearsay. Memo. In Support, Docket No. 21, p. 1-2.  The Court will address each argument in turn.

First, Defendants argue that the recordings are outside the pleadings and therefore the Court must either consider them and change the Motion to Dismiss into a Motion for Summary Judgment or reject them and consider only the pleadings.   As the Court previously converted the Motion to Dismiss into a Motion for Summary Judgment, this argument need not be addressed further. (Docket No. 25.)

Second, Defendants argue that the recordings are not properly authenticated under Federal Rule of Evidence 901.  Defendants argue that the following foundation requirements, as

**Report and Recommendation - 4**

set forth in *United States v. McKeever,* must be shown: 1) the recording device was capable of recording the conversation;  2) the operator was competent to operate the recording device; 3) the recoding is authentic and correct;  4) no changes, additions or deletions have been made to the recording; 5) the recording has been preserved in a manner shown to the court; 6) the speakers are identified;  and 7) the conversation was elicited voluntarily and in good faith without any form of inducement.  *United States v. McKeever,* 169 F.Supp. 426 (S.D.N.Y. 1958) *rev'd on other grounds* 271 F.2d 669 (2d Cir. 1959).  The Ninth Circuit has not adopted this test as a whole;  instead, the Ninth Circuit has been reluctant to impose rigid foundation requirements due to the diverse and particularized circumstances of different cases.  *United States v. King*, 587 F.2d 956 (9th Cir. 1978).  Thus, the Ninth Circuit has held that the nature of the foundation to be laid for recordings "'is a matter largely within the good discretion, judicially exercised, of the trial judge.'" *Id. citing  Brandow v. United States*, 268 F.2d 559 (9th Cir. 1959).   The Ninth Circuit further has explained that the trial court "must be satisfied that the recording is accurate, authentic, and generally trustworthy."  *Id. a*t 961.

  Spencer's Affidavit states: "Attached hereto and incorporated herein by reference as exhibit A is a true and correct copy of a CD containing the recorded conversations that I had with one of the defendants and an agent of the defendants." (Docket No. 17-2).  The affidavit does specifically identify the persons speaking in the recordings; however, the parties conversing with Spencer on the audio CD do not specifically identify themselves during the conversations. Additionally, Spencer offers no evidence with respect to the recording device or technique used to record the conversations.  Thus, the Court concludes that, without further foundation, it is not assured of the accuracy of the recordings.  Therefore,  the recordings and transcriptions in

**Report and Recommendation - 5**

Spencer's Affidavit should be stricken for the purpose of considering the instant Motion for Summary Judgment.

Third, Defendants argue that the recorded and transcribed statements of Phil Boyd, an engineer working on water supply projects for the District, are inadmissable hearsay and do not fit within any hearsay exception. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE 801(c). However, certain out of court statements, including statements relating to the state of mind of the listener, have been found admissible as non-hearsay where their probative value is not substantially outweighed by their prejudicial effect. AmJur Evidence §674.

As stated above, the recorded and transcribed conversations will not be considered in resolving the Motion for Summary Judgment, due to the lack of foundation. Therefore, no further analysis of Defendants' hearsay argument is necessary. However, the Court notes that the portions of Spencer's affidavit which state the alleged date the recorded conversation between Spencer and Phil Boyd occurred and provide Spencer's explanation of what he understood from this conversation with Phil Boyd are not hearsay and are not stricken.[5]

## B. Motion for Summary Judgment

### 1. Legal Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings,

---

[5] The Court notes that the Defendants only sought to strike the audio recording and transcription of the conversation between Phil Boyd and Spencer. Memo. In Support, Docket No. 21, p. 4.

**Report and Recommendation - 6**

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law.  *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992).  The Ninth Circuit has found that, to resist a motion for summary judgment,

> the non-moving party:  (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for

> which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

### 2. Statute of Limitations

In connection with civil rights claims filed under 42 U.S.C. Section1983, the statute of limitations period is governed by state law. *Henderson v. Idaho*, 715 P.2d 978, 980 (Idaho 1986). State law also governs whether any tolling provisions apply. *Bd. of Regents v. Tomanio*, 446 US 478, 484 (1980). However, federal law governs when accrual of such claims begins. *Id.* In Idaho, there is a two year statute of limitations for Section1983 claims, as they are considered similar to personal injury actions. I.C. 5-219(4); *Gibson v. Ada County*, 133 P.3d 1211 (Idaho 2006) *citing Henderson,* 715 P.2d at 981. Under federal law, accrual of a cause of action occurs, and therefore the two year statute of limitations begins to run, "when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 127 S.Ct. at 1097. "The touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id*. Further, a claim accrues upon awareness of the actual injury or adverse employment action and not when the plaintiff suspects a legal wrong. *Gibson v. Ada County, Idaho*, 2008 WL 4889895 (D. Idaho 2008).

Defendants allege that Plaintiff's Second Amended Complaint is barred by the statute of

**Report and Recommendation - 8**

limitations, because Spencer knew that the District lacked water supply for his project and that the District was not going to have a water study conducted for him prior to June 27, 2006, more than two years before Plaintiff filed his Second Amended Complaint.  In making this assertion, Defendants argue that the Second Amended Complaint does not relate back to the date the original complaint was filed under Rule 15(c).  Additionally, Defendants argue that Spencer cannot rely on the timing of when he filed the original complaint for tolling the statute of limitations for three reasons:  1) the original complaint was superceded by the Second Amended Complaint;  2) the original complaint was not served within 120 days as required by law;  and 3) the tolling period that commenced upon filing of the original complaint expired when the allotted time period of 120 days to serve expired.  The Court will address each argument in turn.

First, the Court will address when the cause of action accrued.  As noted above, the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action.  In Defendants' original Memorandum in Support of the Motion to Dismiss (Docket No. 15), Defendants argue that Spencer knew or had reason to know of the injury on January 5, 2006, when his request for a will serve letter for water service to his property was denied.[6]  In response to Spencer's contention that he believed a will serve letter would be issued following completion of the water study, Defendants expanded their argument.  In their second Reply (Docket No. 32), Defendants argue that Spencer knew prior to two years before he filed his Second Amended Complaint that the District would not be able to provide him a will serve letter because he knew that the District lacked the source water capacity to serve his subdivision,

---

[6] Spencer specifically alleges "[d]istrict employees told the plaintiff that it was not their policy to issue such a letter." Second Amended Complaint, Docket No. 4, ¶1.

**Report and Recommendation - 9**

a prerequisite to performance of an engineering study and issuance of a will serve letter.[7] To support this conclusion, Defendants point to the following statement by District President Linda Davis on March 2, 2006, at the Kootenai County Hearing Examiner hearing on Spencer's subdivision project, which Spencer attended. She stated:

> ...we do not have adequate water to serve his subdivision, and we, we have received from him a deposit for engineering study which we were unable to even begin because the issues that we face before we could even address his subdivision are hundreds and hundreds of thousands of dollars and we have something in our water district called mitigation fees that the developer must pay so that the constitutes who are currently on our system don't have to cover those costs, and those mitigation fees would be just inordinate. Davis Aff., Docket No. 34, ¶16.

Further, Defendants argue that a conversation between Spencer and Phil Boyd, the engineer working on the water project, that occurred only a few weeks after the hearing on March 2, 2006, supports Defendants' position, because Mr. Boyd informed Spencer again that the District did not presently have enough water to serve a development like the one Spencer was proposing.[8] Boyd Aff., Docket No. 33,¶ 4.

Spencer disagrees and claims his cause of action accrued on July 10, 2006, "when he first

---

[7] According to Linda Davis: "The District's ability to commit to provide water (i.e. to issue a will serve letter) was dictated by whether it had sufficient source, transmission, storage and booster capacity to do so. A very important piece of the analysis was also determining what effect a new development would have on the existing system and residents." Davis Aff. Docket No. 34, ¶ 7. She further explains that, where the impact is clear, a conditional will serve letter will be issued that commits the District to provide water once the developer meets certain conditions. *Id*. Where the impact is not clear, the District would collect a deposit that would be used to conduct, "when feasible," an engineering study. *Id. at* ¶ 8. If the area already is facing supply shortfalls, the District would not perform the engineering study and would hold the deposit until the developer asked for it back or the study became feasible. *Id.*

[8] This conversation allegedly occurred on an earlier date than the conversation recorded by Spencer that is the subject of Defendants' Motion to Strike.

**Report and Recommendation - 10**

became aware that despite repeated assurances by one or more of the Defendants, he would not be issued a 'will serve letter.'" Response, Docket No. 17, p. 1. As noted above, on January 5, 2006, the District requested Spencer to provide a $2000 deposit to conduct an engineering study to "ascertain what, if any improvements would be required to provide service to Plaintiff's real property." Response, Docket No. 17, p. 1. Spencer also received a letter from the District dated January 18, 2006, explaining that the District was in receipt of the $2000 deposit and that: "After the engineering study is completed, costs associated with the project will be outlined, and provided to you with the above conditions in the form of a "Will Serve Letter." Spencer's Second Affidavit, Docket No.29, Exh. B.

Spencer also alleges that, during the Spring and Summer of 2006, he repeatedly was assured by Mike Galante, Manager of the North Kootenai Water District, that an engineering study was being conducted. Spencer Second Affidavit, Docket No. 29, ¶ 13, 14. Spencer contends that the first time he became aware no engineering study had been undertaken was on July 10, 2006, when Phil Boyd told him the District had not requested an engineering study. Spencer Second Affidavit, Docket No. 29, ¶ 13, 14, 15. Thus, Spencer alleges that the statute of limitations on his Section 1983 claims did not begin to accrue until July 10, 2006.

The Court finds that genuine issues of material fact remain as to when Spencer knew or reasonably should have known that he was not going to receive a will serve letter. Ms. Davis' statements are subject to potentially different interpretations regarding whether and when an engineering study would be undertaken by the District. Additionally, Ms. Davis' Affidavit acknowledges that, when engineering studies do occur "depends on a number of factors including the status of pending District improvements and the extent to which other developers had asked for service." Davis Aff. Docket No. ¶ 8. Further, the fact that the District requested

**Report and Recommendation - 11**

and held Spencer's $2000 deposit for the engineering study, as well as sent Spencer a letter detailing the procedures the District would follow before issuing a well serve letter, provides at least some evidence that Spencer reasonably could have been waiting for the engineering study to be conducted despite the difficulties mentioned by Ms. Davis.  Additionally, during oral argument on April 27, 2009, Spencer contended that Ms. Davis' comments during the Kootenai County hearing on March 2, 2006,  were personal in nature, rather than representative of the District's position, because traffic to Spencer's subdivision, if approved, would pass by property she owned.

In summary, the evidence presently in the record is not conclusive with respect to when Spencer should have reasonably known that he was not going to receive a will serve letter. Therefore,  a genuine issues of material fact exist regarding when the statute of limitations accrued and/or expired on Spencer's Section 1983 claims.  Accordingly, Defendant's Motion for Summary Judgment must be denied.

### 3.  Defendants' Other Arguments

Further, Defendants argued in their Motion to Dismiss that Spencer cannot rely on the filing of his original complaint to toll the statute of limitations for four reasons:  1) the Second Amended Complaint does not relate back under 15(c);  2) the original Complaint was superceded by the Second Amended Complaint; 3) the original Complaint was not served within 120 days as required by law; and 4) the tolling period after filing the original Complaint expired when the 120 days to serve expired.

First, Defendants argue that the Second Amended Complaint is not saved by the relation back rule in Fed. R. Civ. P. 15(c).  The Ninth Circuit has held that an amended complaint will relate back pursuant to FRCP 15(c) "if the original pleading put the defendant on notice of the

**Report and Recommendation - 12**

particular transactions or set of facts" that gave rise to the cause of action in the amended complaint. *Percy v. San Francisco General Hospital*, 841 F.2d 975, 979 (9th Cir. 1998).[9] Further, the Ninth Circuit has held that Rule 15(c) requires that the defendant have notice of the institution of the action within the time provided for commencement of the action. *Lindley v. General Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986).

     Based on the foregoing, Defendants argue that they had no notice of Plaintiff's claims and the institution of his action prior to the statute of limitations expiring, because Plaintiff's original complaint filed on January 4, 2008, was not served upon or otherwise provided to the Defendants. Thus, because they had no notice of the original complaint, Defendants argue that the Second Amended Complaint cannot relate back. Spencer responds that all the Second Amended Complaint did was dismiss two defendants and thus, as "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out- in the original pleading," it should relate back under Rule 15(c)(1)(B).

     Spencer's argument is flawed, as it does not take into account the requirement that Defendants have notice of the conduct, transaction or occurrence that is the basis of his action. Therefore, because the Defendants were never served with the original complaint, they were not on notice and the Second Amended Complaint does not relate back to the original complaint.

---

[9] This case concerned a slightly different situation where the plaintiff amended the complaint to add new claims after the statute of limitations had run, as opposed to filing almost the same complaint against almost the same defendants; however, the policy is similar. The Court stated: "[i]n deciding whether an amendment to state a new claim against the original defendant is proper, the policies underlying the statute of limitations are implicated. Thus, amendment of a complaint is proper if the original pleading put the defendant on notice of the "particular transaction or set of facts" that the plaintiff believes to have caused the complained of injury." *Percy*, 841 F.2d at 979 *citing Santana v. Holiday Inns, Inc.* 686 F.2d 736, 738-39 (9th Cir. 1982).

**Report and Recommendation - 13**

Second, Defendants argue that the original complaint was superceded by the Second Amended Complaint. There is no further explanation of this argument by Defendants and no response from Spencer, so the Court will not address it further.

Third, Defendants argue that the original complaint was never served and therefore the tolling period of the statute of limitations expired after 120 days. Plaintiff concedes that he was "negligent in failing to serve the original complaint within the federally prescribed 120 day period," but argues good cause for an extension of the service period under Rule 4(m) of the Federal Rules exists, in the fact that he was relying in good faith on the six month service period in Rule 4(a)(2) of the Idaho Rules of Civil Procedure. Response, Docket No. 29, p. 6.

It is well settled in the Ninth Circuit that courts are to construe pleadings liberally in favor of pro se litigants; however, pro se litigants are still bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995) *citing King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Rule 4(m) of the Federal Rules of Civil Procedure provides that, "if a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified period of time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). To establish good cause, a plaintiff may be required to show: (a) the party to be served received notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) the plaintiff would be severely prejudiced if his complaint were dismissed. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 1991). Generally, a showing of good cause does not include ignorance of the law.[10] *See*

---

[10] However, at least one court has held that a claim being barred by the statute of limitations after dismissal due to failure to comply with Rule 4(m) constitutes good cause to

**Report and Recommendation - 14**

*Townsel v. Contra Costa County, Cal*., 820 F.2d 319 (9th Cir. 1987); *see also Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996) ("Failure to read a rule is the antithesis of good cause. Ignorance may be an explanation but is not an excuse.").

Even in the absence of good cause, Rule 4(m) authorizes broad judicial discretion to extend the time for service even after the 120 day period has expired. *Efaw v. Williams,* 473 F.3d 1038, 1040 (9th Cir. 2007) *citing Mann v. American Airlines*, 324 F. 3d 1088, 1090 n.2 (9th Cir. 2003). This conclusion is bolstered by the finding of the United States Supreme Court in *Henderson v. United States* that the 120 day time period for service under Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Id. citing Henderson v. United States*, 517 U.S. 654, 661 (1996). However, this discretionary authority is not limitless, and in making extension determinations not justified by good cause, the Court may consider factors similar to a statute of limitations bar, prejudice to the defendant,[11] actual notice of the lawsuit, and eventual service. *Id. citing Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). Such discretionary relief may be justified, "if the applicable statute of limitations action would bar the refiled action." Fed. R. Civ. P. 4(m), Advisory Committee Note to 1993 Amendments, Subdivision (m). If a court declines to extend the time for service of process, the court shall dismiss the suit without prejudice and shall not enter judgment in the case. *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004).

In the instant case, Spencer's mistake with respect to the service period does not

---

enlarge the 120 day period. *See Rhodan v. Schofield*, unreported 2007 WL 1810147 (N.D. Ga. 2007)

[11] Prejudice to the Defendants can include a sufficient delay in service that memories fade. *Efaw v. Williams*, 473 F.3d at 1041.

**Report and Recommendation - 15**

constitute good cause. However, after examining the factors taken into consideration when extending the service deadline without good cause, the Court recommends that an extension be granted. First, if the date Spencer became aware of his injury was prior to June 27, 2006, the statute of limitations would bar the cause of action if Spencer was required to re file his original complaint, making the extension appropriate under the Comments to Rule 4(m). Additionally, an extension would not prejudice Defendants, as service was made upon Defendants shortly after, or within approximately 40 days after, the 120-day service period expired.

**Report and Recommendation - 16**

## **RECOMMENDATION**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS RECOMMENDED that:**

1)      The Motion to Strike (Docket No. 21) be GRANTED with respect to the audio CD and transcriptions statements during conversations recorded on the CD; and

2)      The Motion to Dismiss/Motion for Summary Judgment (Docket No. 14), be DENIED; and

3)      The time limit for service of the original Complaint (Docket No. 1) be extended until the date the Second Amended Complaint (Docket No. 4) was served upon Defendants.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: May 28, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge